UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED
IN CLERKS OFFICE**

2005 JAN 24 P 4: 0!

U.S. DISTRICT COURT
DISTRICT OF MASS.

05 10142 WGY

|  |  |  |
|---|---|---|
| AMERIQUEST MORTGAGE COMPANY,<br>Plaintiff, | ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. |
| ALLIED HOME MORTGAGE CAPITAL CORP.<br>AND PAUL D. HARRISON,<br>Defendants. | ) ) ) ) | |

## AMERIQUEST MORTGAGE COMPANY'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Ameriquest Mortgage Company ("Ameriquest") respectfully submits this

memorandum of law in support of its motion for a preliminary injunction enjoining and

prohibiting defendants Allied Home Mortgage Capital Corp. ("Allied") and Paul D. Harrison

("Mr. Harrison") (Allied and Mr. Harrison being referred to collectively hereafter as the

"Defendants") from falsely advertising that (1) "Ameriquest has recently closed all its refinance

operations in Massachusetts;" (2) that Ameriquest has done so "in reaction to a new state law

regarding predatory lending;" (3) that customers and potential customers of Ameriquest will

"improve [their] current situation;" and (4) that customers of Ameriquest can obtain a new and

better loan, and obtain further assistance, from Allied and certain unnamed mortgage lenders

with whom Allied allegedly has alliances.

As set forth in the Complaint filed with this motion, this action arises in response to the

Defendants' mailing of a flagrantly false and disparaging advertisement to an Ameriquest

customer on or about December 2, 2004. In this letter advertisement, a true and accurate copy of

which is attached as Exhibit A to the Complaint, the Defendants falsely informed Ameriquest's

customer that Ameriquest had closed its refinancing operations in Massachusetts as a result of a new state law regarding predatory lending. The Defendants' use of this flagrantly false and misleading advertisement was in violation of the Lanham Act and Mass. Gen. L. ch. 93A.

By this motion, Ameriquest seeks to enjoin the Defendants from continuing to direct such false and deceptive advertisements to Ameriquest's customers and any potential customers.

## FACTUAL BACKGROUND

The facts underlying Ameriquest's motion for preliminary injunction, and its complaint, are simple and straightforward.

Ameriquest is a national mortgage lender with headquarters in Orange, California. The company originates and services home mortgage loans through more than 270 branch offices across the United States, including 11 offices in the Commonwealth of Massachusetts. Ameriquest has been registered to do business in Massachusetts since August 1994 or earlier, and has been originating and servicing various kinds of mortgages in the Commonwealth since registering to do business here. At all times relevant to this lawsuit, Ameriquest has offered refinancings as part of the product line of mortgages and loans made available to its Massachusetts customers. (*See* Affidavit of Scott MacGregor ("MacGregor Aff.") at ¶ 4).

Upon information and belief, Allied claims that it is the largest privately held mortgage banker and mortgage broker in the United States, with more than 700 offices in 48 states, Guam, Puerto Rico and the Virgin Islands.[1]  As such, Ameriquest and Allied are competitors in the mortgage industry both in Massachusetts and throughout the country.

On or about December 2, 2004, an Ameriquest customer who had recently refinanced a mortgage loan with Ameriquest contacted Ameriquest's branch office in Westboro,

---

[1]  This information is displayed on Allied's website at www.alliedmtgcapital.com.

Massachusetts, to notify the company that he had received a form letter advertisement from Allied, which falsely stated that Ameriquest had recently closed all of its refinancing operations in Massachusetts. Ameriquest requested that this customer forward the letter to its branch office, and obtained a copy shortly thereafter.

The letter advertisement at issue, which appeared on Allied's letterhead and which Mr. Harrison was the signatory to, provided in relevant part as follows:

> Re: Ameriquest Mortgage
>
> You obtained a mortgage in the last 12 months from Ameriquest mortgage. We have your original loan amount and closing date on file for your assistance.
>
> Ameriquest has recently closed all of its refinance operations in Massachusetts in reaction to a new state law regarding predatory lending. Don't worry; we have formed an alliance with several mortgage lenders that have agreed to improve your current situation ...

At least two of the statements in the Defendants' advertisement are patently false, and form the basis of Ameriquest's claims and request for injunctive relief against the Defendants. First, the statement that "Ameriquest has recently closed all its refinance operations in Massachusetts" is false. (MacGregor Aff. at ¶ 4). Second, the statement that Ameriquest closed its refinance operations "in reaction to a new state law regarding predatory lending" is false. (MacGregor Aff. at ¶ 4). The statement regarding Ameriquest's purported reaction to the predatory lending law is also misleading and damaging in that it implies that Ameriquest previously engaged in predatory lending in connection with its refinancing operations, but was forced to cease these operations with the enactment of the new law.

Although Ameriquest does not presently know whether the Defendants sent such advertisements to other Ameriquest refinancing customers, the fact that the advertisement sent by the Defendants has the appearance of a form letter suggests that this was not an isolated

3

incident, but rather a concerted effort by the Defendants to target Ameriquest's Massachusetts customers. Notably, prior to filing the present Complaint and the accompanying motion for preliminary injunction, Ameriquest requested that Allied stop directing such false and deceptive advertisements to Ameriquest's customers and potential customers, and attempted to obtain limited information from Allied regarding the scope of its use of such false and misleading advertisements. Allied failed to respond to Ameriquest's request, prompting this litigation.[2]

   As set forth in more detail below, the false, misleading and disparaging statements made in the advertisement mailed by the Defendants violate Section 43(a) of the Lanham Act and Mass. Gen. L. ch. 93A. Ameriquest has a likelihood of success on each of its claims against the Defendants, and has and will continue to suffer irreparable harm if the Defendants are not enjoined from sending further false and misleading advertisements to Ameriquest's customers. Accordingly, Ameriquest is entitled to a preliminary injunction to restrain the Defendants from

---

[2] On January 7, 2005, Ameriquest's counsel sent a letter to Allied's president, Jamey Hodge, by fax and by certified mail, return receipt requested, notifying Allied that its use of false, misleading and disparaging representations in its advertisements targeting Ameriquest's customer(s) violated state and federal laws prohibiting false advertising and unfair competition. (Affidavit of Daniel E. Rosenfeld, Esq. ("Rosenfeld Aff.") at ¶ 3). Copies of this letter were also sent on January 7th to Allied's registered agent in Massachusetts, and to defendant Mr. Harrison at Ameriquest's Milford, Massachusetts office. (Id.). In the January 7th letter, a true and accurate copy of which is attached as Exhibit A to the Affidavit of Daniel E. Rosenfeld, Esq. filed herewith, Ameriquest's counsel requested that Allied immediately cease distribution of any advertisements containing false, misleading and/or disparaging descriptions or representations of fact relating to Ameriquest and/or Ameriquest's products, services or commercial activities; requested that Ameriquest provide a written report detailing the scope of its use of such (or similar) advertisements; and warned that Allied's failure to respond to Ameriquest's letter by January 14, 2005 would force Ameriquest to commence a civil action against Allied and to seek immediate injunctive relief. (Id. at ¶ 4). The faxed copy of the January 7th letter was successfully transmitted to Allied's headquarters on January 7th, and the mailed copy of the January 7th letter was received and signed for by Allied on January 11th, but as of the date of filing of Ameriquest's Complaint and motion for preliminary injunction, Allied has failed to respond to Ameriquest's letter. (Id. at ¶¶ 5-6).

continuing to mail such false and disparaging advertisements to Ameriquest's customers,

potential customers and/or other third parties.

## ARGUMENT

### I.    Standard For Granting Preliminary Injunction

The standard governing the issuance of a preliminary injunction in the First Circuit is

well established. A preliminary injunction should be granted if the moving party establishes that

(1) it is likely to succeed on the merits; (2) it faces a significant potential for irreparable harm if

the injunctive relief is not granted; (3) the balance of harms weighs in its favor; and (4) the

public interest will not be adversely affected by the injunction. *Rarities Group, Inc. v. Karp*, 98

F. Supp. 2d 96, 104 (D. Mass. 2000) (citing *Planned Parenthood League of Mass. v. Bellotti*, 641

F.2d 1006, 1009 (1st Cir. 1981)); *see also Spalding Sports Worldwide, Inc. v. Wilson Sporting*

*Goods Co.*, 198 F. Supp. 2d 59, 65 (D. Mass. 2002) (citing *EF Cultural Travel BV v. Explorica,*

*Inc.*, 274 F.3d 577, 581 (1st Cir. 2001)).

While courts in the First Circuit generally consider all four elements when considering a

motion for preliminary injunction, it is well recognized that "[l]ikelihood of success is the

touchstone of the preliminary injunction inquiry." *See Cablevision of Boston, Inc. v. Public*

*Improvement Comm'n,* 184 F.3d 88, 107 (1st Cir. 1999) (citing *Philip Morris, Inc. v.*

*Harshbarger*, 159 F.3d 670, 674 (1st Cir. 1998)); *Knights of Colombus Council #94 v. Town of*

*Lexington*, 124 F.Supp.2d 119, 122 (D. Mass. 2000) (noting that First Circuit regards the first of

four factors "critical in determining the propriety of injunctive relief") (quoting *Lancor v.*

*Lebanon Hous. Auth.*, 760 F.2d 361, 362 (1st Cir. 1985)); *see also New Comm. Wireless Serv.,*

*Inc. v. Sprintcom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("The *sine qua non* of this four part inquiry

is likelihood of success on the merits").

Significantly, in Massachusetts actions involving claims under Section 43(a) of the Lanham Act, a showing that the challenged statement is likely to be found literally false is sufficient, *on its own*, to justify issuing an injunction. *See Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 120, 139 (D. Mass. 1996) (ruling plaintiff relieved of obligation to show application for injunctive relief meets the standards of irreparability of harm, favorable balance of the hardships of injunctive relief and benign effect of injunctive relief, where plaintiff found likely to succeed in establishing literal falsity of defendant's advertising claim); *see also Camel Hair and Cashmere Inst. of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 15-16 (1st Cir. 1986) (holding that "literally false" finding "in itself warranted the grant of the injunction sought"). In the present case, the statements made in the Defendants' advertisement are not just misleading, they are *literally false*. (MacGregor Aff. at ¶ 4). Accordingly, the inquiry should end there, and this Court should grant Ameriquest's request for an injunction based solely on such a finding. *See Gillette Co.*, 946 F. Supp. at 120, 139.

## II.    Ameriquest Has A Likelihood Of Success On The Merits Of Its Claims

As set forth below, Ameriquest is likely to succeed on each of its claims against the Defendants.

### 1.    Ameriquest Will Likely Succeed On Its Lanham Act Claim

The Lanham Act, also known as the federal trademark statute, establishes a far-reaching federal cause of action for false advertising. *See* 15 U.S.C.A. § 1125. Specifically, Section 43(a)(1)(B) of the Act provides a cause of action where one uses a false or misleading description or representation of fact, which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities ..." 15 U.S.C.A. § 1125(a)(1)(B).

6

To prove a false advertising claim under the Lanham Act, a plaintiff must generally demonstrate the following elements: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about it's own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading statement, either by direct diversion of sales from itself to defendant or by a lessening of goodwill associated with its products. *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002) (citing *Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 33 n. 6 (1st Cir. 2000)). However, where, as here, the statement at issue is literally false and involves a competitor's goods or services, courts presume that the advertisement was material, and a violation of the statute may be established without evidence of consumer deception. *See Cashmere & Camel Hair Mfrs.*, 284 F.3d at 311 ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception."); *Clorox Co.*, 228 F.3d at 33 n. 6 ("With respect to materiality, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers.").

Applying these elements to the facts of the present case, Ameriquest clearly has a likelihood of success in proving its false advertising claim under the Lanham Act. First, the representations made in the advertisement sent by Allied to Ameriquest's customer were patently false: Ameriquest never "closed all of its refinance operations in Massachusetts in reaction to a new state law regarding predatory lending," as falsely claimed in the offending advertisement.

(MacGregor Aff. at ¶ 4).  Second, because the representations and statements made in the advertisement were literally false, the element of materiality is presumed, and Ameriquest need not produce evidence to establish the related element of consumer deception.  *See Cashmere & Camel Hair Mfrs.*, 284 F.3d at 311; *Clorox Co.*, 228 F.3d at 33 n. 6.  Third, Ameriquest and Allied are both national mortgage companies, operating within the federally regulated mortgage industry, and the false advertisement was clearly placed "in commerce" as that term is defined under the Act and interpreted in the case law.  *See Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 560 (1st Cir. 1982) (ruling "jurisdiction exists to grant relief under the Lanham Act if a defendant's activities although wholly intrastate tend to have a damaging effect on plaintiff's federally protected interstate business"); *Nike, Inc. v. Rubber Mfrs. Ass'n*, 509 F. Supp. 919, 924 (S.D.N.Y. 1981) (ruling "the mere solicitation of sale is 'commerce' within the meaning of Section 43(a)").  And fourth, there can be no doubt that the advertisement has or is likely to injure Ameriquest's business, consumer good will and business relations, as will any additional false advertisements that have been or may be mailed by the Defendants to Ameriquest's customers.[3]

    2.    <u>Ameriquest Will Likely Succeed On Its Mass. Gen. L. Ch. 93A Claim</u>

As recognized by the District Court in *Gillette Co.*, for the most part, the elements of a claim under Mass. Gen. L. ch. 93A mirror the elements of a claim for false advertisement under

---

[3]    Although this memorandum will address Ameriquest's likelihood of success on its remaining claims, and the remaining elements typically necessary for a preliminary injunction to issue – the standards of irreparability of harm, favorable balance of the hardships of injunctive relief, and benign effect of injunctive relief on the public - this Court's finding that Ameriquest is likely to succeed in establishing the falsity of the Defendants' claims is all that is necessary for this Court to grant Ameriquest's request for such injunctive relief.  *See Gillette Co.*, 946 F. Supp. at 139 (ruling finding by court that plaintiff is likely to succeed in establishing "literal falsity of [defendant's] claims ..." relieved the plaintiff of the obligation to show that application for injunctive relief met other standards of preliminary injunction inquiry).

§ 43(a) of the Lanham Act. See 946 F. Supp. at 120 n. 3. Regulations promulgated by the Massachusetts Attorney General to enforce ch. 93A provide explicitly that "[i]t is an unfair and deceptive act for a seller to make any material representations of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading." *See Skinder-Strauss Assocs. V. Massachusetts Cont. Legal Educ., Inc.*, 914 F. Supp. 665, 681-82 (D. Mass. 1995) (quoting 940 C.M.R. § 6.04(1) (1995)). In the present case, it is clear that the Defendants *should have known* that Ameriquest had not closed its refinancing operations, as falsely represented in the advertisement mailed by the Defendants. Accordingly, Ameriquest will likely be able to show that the Defendants knew, or *should have known,* that the representation was false or misleading, thereby establishing the Defendants' liability under Mass. Gen. L. ch. 93A.

### III.    Ameriquest Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted

To show irreparable harm, Ameriquest must demonstrate potential injury that cannot be redressed by legal damages or equitable remedies following trial. *See Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994); *see also GTE Products Corp. v. Stewart*, 424 Mass. 721, 724 (1993) ("A plaintiff experiences irreparable injury if there is no adequate remedy at final judgment"). Here, Ameriquest is suffering immediate irreparable injury, and will continue to suffer irreparable injury if the Defendants are not restrained from sending additional false and misleading advertisements to Ameriquest's customers and other third parties.

The single advertisement of which Ameriquest is aware was sent by the Defendants to Ameriquest's customer on or about December 2nd. That advertisement falsely represented that Ameriquest had closed its refinancing operations in Massachusetts, and implied that Ameriquest did so due to a new predatory lending law. Ameriquest has no way of knowing whether the

Defendants have sent similar false and misleading direct mail advertisements to other Ameriquest customers, potential customers or third parties, but the general form of the letter indicates that it may have been mailed by the Defendants to all borrowers that have refinanced with Ameriquest in the past year or more. This form of false advertisement, if widely distributed, would clearly undermine the invaluable good will and reputation of Ameriquest, and lead to an attendant loss of customers and profits.

These harms cannot be satisfactorily quantified, and warrant a finding by this Court that Ameriquest faces a clear and imminent threat of irreparable injury should the Defendants not be restrained from sending further false and misleading advertisements. *See American Board of Psychiatry and Neurology, Inc. v. Johnson-Powell, M.D.*, 129 F.3d 1, 4 (1st Cir. 1997) (noting trademark infringement results in irreparable harm because the attendant loss of profits, goodwill and reputation cannot be satisfactorily quantified, and the trademark owner cannot be adequately compensated). Accordingly, Ameriquest respectfully requests that this Court grant Ameriquest's motion for preliminary injunction to protect Ameriquest's good will and business reputation from any further unlawful attack by the Defendants.

### IV. The Defendants Will Not Suffer Irreparable Harm If A Preliminary Injunction Is Granted

While Ameriquest will suffer immediate and irreparable harm if a preliminary injunction is not issued, the imposition of such an order will not impose any burden on the Defendants except to require them to comply with existing law. The Defendants will be still be free to advertise in an appropriate and lawful manner, and will be precluded only from using false and misleading advertisements such as the one addressed in this memorandum. In essence, all that Ameriquest seeks is to restore the status quo as it existed just prior to the Defendants' unlawful use of false and misleading advertisements targeting Ameriquest's customers.

10

**V.    The Public Interest Favors The Issuance Of A Preliminary Injunction**

The Lanham Act's prohibition against false and misleading advertisements is expressly intended to protect the public from deceptive forms of advertisements, and the issuance of a preliminary injunction here will further serve the Act's purpose.  It is in the public interest to restrain the Defendants - and other companies and third parties - from using false and misleading statements in advertisements.  This factor further favors the Court granting Ameriquest's motion for preliminary injunction.

## CONCLUSION

For the foregoing reasons, Ameriquest respectfully requests that its motion for preliminary injunction be granted.

Respectfully submitted,

KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP


Daniel E. Rosenfeld (BBO #560226)
Robert T. Milanette (BBO #641149)
KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP
75 State Street
Boston, MA 02109
617-261-3100
617-261-3175 (fax)

Attorneys for plaintiff, Ameriquest Mortgage
Company

Dated:  January 24, 2005

11