UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERIQUEST MORTGAGE COMPANY,

        Plaintiff,

v.

ALLIED HOME MORTGAGE CAPITAL CORP.
and PAUL D. HARRISON,

        Defendants.

CIVIL ACTION
No. 05-CV-10142 WGY

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants, Allied Home Mortgage Capital Corporation ("Allied") and Paul D. Harrison ("Harrison"), hereby opposes the motion of plaintiff, Ameriquest Mortgage Company ("Ameriquest"), for a preliminary injunction. Allied was served with the papers commencing this action only late on January 25, 2005 and has had insufficient time to prepare a full memorandum in support of such opposition or prepare for a hearing on plaintiff's motion. Accordingly, defendants respectfully object to the scheduling of a hearing on plaintiff's motion without sufficient notice to provide it with time for adequate preparation. However, in support of their opposition defendants file herewith the Affidavit of Paul D. Harrison (the "Harrison Affidavit") and further state as follows:

1. The preliminary injunction sought by Ameriquest is neither appropriate nor necessary. Ameriquest seeks a broad and vague injunction based on the response of a single customer to a single letter from a single employee of Allied. Despite Allied's prompt notice to Ameriquest, upon Ameriquest's questioning the accuracy of that letter, that the letter would not be sent again,

and, after this lawsuit was filed, Allied's willingness to agree, through counsel, not to distribute again the alleged misinformation, Allied has insisted on proceeding in seeking an overbroad and vague injunction neither justified by Allied's conduct nor necessary to avoid irreparable injury.

2. The letter of which Ameriquest complains (the "original letter") was sent by Harrison, an Allied employee based in Milford, Massachusetts, in early December 2004 to 50 people whose names were taken from a list of persons whose loans with Ameriquest had closed within the past year. As is customary in the trade, the list was purchased from a company that sells such information to the public, based on information generated from public records. (Harrison Affidavit ¶¶ 3, 5, Ex. 1.)

3. The statement in the original letter that Ameriquest had closed its refinance operations in Massachusetts in reaction to a new state law against predatory lending was based on information Mr. Harrison obtained from Jim Dring, an employee of Argent Mortgage, a company affiliated with Ameriquest. Mr. Dring told Mr. Harrison that because of certain provisions concerning prepayment penalties in the new law that made it unattractive for Ameriquest to continue refinancing in Massachusetts, Ameriquest was closing its refinance operations in the state. (Harrison Affidavit ¶ 4.)

4. After sending out a letter containing the statement that Ameriquest was closing its refinance operations in Massachusetts, Mr. Harrison received a telephone message from Kevin Girsh, an employee of Ameriquest, asking that he call him. Mr. Harrison did so on December 13 and was told by Mr. Girsh that Ameriquest was not closing all its refinance operations in Massachusetts. Mr. Harrison told Mr. Girsh that he had received that information from Mr. Dring but that he would not send the original letter; he would instead revise it to remove the information that Mr. Girsh said was incorrect. (Harrison Affidavit ¶ 6.) Mr. Harrison removed

the statements to which Mr. Girsh had objected and sent out a revised letter (the "revised letter") during the last two weeks of December. The letter was sent to the remaining people on the purchased list, about 1400 people. (Harrison Affidavit ¶ 7.)

5. There was no significant response to either letter. Allied received only two loan applications, one of which was denied. (Harrison Affidavit ¶ 9.)

6. Thus Ameriquest, through Kevin Girsh, was informed on December 13 that Allied would remove from its mailings the statements to which Ameriquest objected. Since Ameriquest obviously is aware of the mailings sent by Allied to persons who have recently closed loans with Ameriquest, in all likelihood Ameriquest has also seen the revised letter, which does not contain the offending statement. Thus Ameriquest has known for well over a month that Allied was not engaging in any conduct to which Ameriquest could legitimately object and that no injunctive relief was necessary.

7. After receiving notice of this lawsuit on January 26, outside counsel for Allied, located in Florida, telephoned plaintiff's counsel and informed him that Allied had ceased to send any letters containing the alleged misinformation. Counsel for Allied further stated that Allied was willing to agree to the entry of an order in accordance with parts 1. (i) and 1. (2) of plaintiff's proposed order, namely that Allied would not falsely advertise that Ameriquest had recently closed all its refinance operations in Massachusetts or that Ameriquest had done so in reaction to a new state law regarding predatory lending. Ameriquest refused that offer.

8. The letter on which Ameriquest bases this case was sent on one occasion to 50 people. If it contained misinformation, the erroneous statements were based in information provided by a person whom Allied's employee had good reason to believe was aware of the relevant facts. Once Allied's employee learned that Ameriquest contested that information, he agreed to remove

it from any future letters. That was more than a month ago. As Ameriquest should be, and no doubt is, aware, Allied has distributed no further advertising containing the statements that Ameriquest has said are incorrect, Allied has agreed not to make those statements again, and it has not done so. No preliminary injunction is necessary, because there is nothing to enjoin. *See Merry Hull & Co. v. Hi-Line Co., Inc.*, 243 F. Supp. 45, 53 (S.D.N.Y. 1965) ("Defendant makes no claim to any public or extended use of this name. It in fact has disavowed any real use in the past and makes no claim of right to use it in the future. There is consequently nothing to enjoin.").

9. Despite the absence of need for any injunctive relief, Ameriquest has insisted on seeking an order so broad and vague as not only to be wholly unjustified by Allied's conduct but to be impermissible under Federal Rule of Civil Procedure 65. Except as to the first two items requested (items 1.(i) and 1.(2)), to which Allied would have agreed, the relief sought by Ameriquest is neither "specific in terms" nor does it "describe in reasonable detail … the act or acts sought to be restrained." Fed. R. Civ. P. 65. To the contrary, item 2 of the proposed order is impermissibly vague, overbroad, not necessary to provide relief for the only specific harm of which plaintiff complains, and not necessary to avoid irreparable injury. *See, e.g., IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 543 (7th cir. 1998) (provision of preliminary injunction that enjoined "unlawful insurance practices" was impermissibly vague); *Florida Ass'n of Rehab. Facilities v. State of Florida Dep't of Health and Rehabilitative Servs.*, 225 F.3d 1208, 1222-23 (11th Cir. 2000) (terms of injunction were not specific because it did little more than enjoin defendants from violating the law). Item 1.(3) is overbroad, unjustified by Allied's conduct, and would prohibit Allied from engaging in legitimate competitive conduct. Items 3 and 4 are not directed to avoiding irreparable harm but are matters than are either unnecessary, in

light of Harrison's description of the relevant events, or can be adequately addressed in discovery.

For the foregoing reasons, among others, defendants respectfully submit that Ameriquest's unfounded and unnecessary motion for a preliminary injunction should be denied.

Dated: January 27, 2005

ALLIED HOME MORTGAGE CAPITAL
CORP. and
PAUL D. HARRISON,

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE
DOCUMENT WAS SERVED UPON THE ATTORNEY OF
RECORD FOR EACH OTHER PARTY BY ~~MAIL~~ HAND ON
1/27/05. *[signature: Marc Temin]*

By their attorneys,

*[signature: Marc Temin]*

Marc Temin (BBO #494280)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000